924                              

another third,—making two-thirds of the whole income from the real estate. The other parties urge that her use under the will is only as to one-third of the real estate left after the dower is taken out. In many respects the dower interest of the widow differs from that of any other life estate. Before the death of the husband, it is an inchoate right, depending upon the estate of the husband himself. After his death an admeasurement of dower must be had, before she has any exclusive use of any portion. These qualifications, however, pertain to the protective reasons for the creation of the estate, and, in substance, her interest is a life estate for her exclusive use and possession in one-third of the realty of which her husband was seised during coverture. That right was independent of the will of the husband. He could not alienate or terminate it. He could not devise it, and therefore the instant he died the inchoate became consummate, and that same instant the real estate which passed to his trustee or heirs or devisees was diminished to the extent of the use of one third to the widow. Hence the life use which he could control was only of two-thirds, and of that his will speaks. It is not to be supposed that he gives to the wife or any other beneficiary the income from property not his own, and from which his estate receives no income. For the practical construction of this will, it must be held that the widow's dower interest is practically the same as a life estate of another person in one-third of the realty. She therefore has, besides the dower interest, the use of two-ninths of the real estate.

Judgment may be entered in accordance with these views. Judgment accordingly.

---

RAY et al. v. NEW YORK BAY EXTENSION R. CO.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

1. REFERENCE—REPORT—REJECTION—RESUBMISSION.
    Affirmance by the supreme court of an order of reference, made at special term, to determine loss occasioned plaintiff by defendant's failure to obey an injunction, did not take away from the court at special term the right to reject a finding of the referee, and send the matter back for further reference.

2. SAME—ASSESSMENT OF DAMAGES BY REFEREE.
    An injunction was granted against the maintenance of defendant's embankment on plaintiff's premises, unless defendant should pay plaintiff $2,000, or within 60 days construct a farm crossing, and institute condemnation proceedings to acquire the land appropriated. Held, that where defendant disobeyed the injunction, and a reference was ordered to determine plaintiff's damage caused thereby, defendant was entitled to show that since the reference it had constructed the farm crossing, and commenced condemnation proceedings, in conformity with the injunction, as bearing on the question of damages.

Appeal from special term, Queens county.

Action by Frederick W. Ray and another against the New York Bay Extension Railroad Company. From an order of the supreme court denying a motion to confirm the report of a referee in a proceeding to punish the defendant for contempt, plaintiffs appeal. Modified.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Charles M. Demond, for appellants.
William J. Kelly, for respondent.

WILLARD BARTLETT, J. This case has already been twice before the appellate division and twice before the court of appeals. 20 App. Div. 539, 47 N. Y. Supp. 301, appeal dismissed in 155 N. Y. 102, 49 N. E. 662; 34 App. Div. 3, 53 N. Y. Supp. 1052, appeal dismissed in 158 N. Y. 702, 53 N. E. 1131. The judgment in the action awarded to the former plaintiff Flora L. Ray $500 damages, with costs, against the defendant, and granted a perpetual injunction against the maintenance of the defendant's embankment in front of said plaintiff's premises, unless the defendant should either (1) pay to the plaintiff, within 60 days, the sum of $2,000, or (2) within the same time should construct a farm crossing over the embankment, and also institute condemnation proceedings to acquire the land of the plaintiff which it had appropriated. The order which we affirmed on the first appeal (20 App. Div. 539, 47 N. Y. Supp. 301) adjudged that the defendant had been guilty of contempt in willfully disobeying this judgment, by reason of the fact that it had not paid the $2,000, nor instituted condemnation proceedings, within the prescribed period of 60 days, but had gone on maintaining and using the embankment, notwithstanding the prohibition in said judgment contained. The order, after imposing a fine of $250 upon the defendant, went on to declare that defendant's misconduct was calculated to and actually did defeat, impair, impede, and prejudice the rights and remedies of the plaintiff, "to her actual loss or injury, namely, the plaintiff's costs and expense incurred or suffered by the plaintiff by reason of said misconduct, and furthermore to the extent, if any, of the value of plaintiff's land * * * so appropriated by the construction and maintenance of the embankment and railroad of the defendant, together with consequential damages to the remainder of plaintiff's said land." A reference was then ordered, to ascertain the actual loss or injury occasioned to the plaintiff by reason of the appropriation of her land, and the consequent damages to the remainder, and also to ascertain the plaintiff's costs and expenses in the proceeding. The order also provided that the plaintiff might apply to the court, upon the coming in of the referee's report, for a further order awarding her such sum as should be found by the referee to be the loss or injury produced by the defendant's misconduct. Upon the reference directed by this order the referee held that he was bound by the judgment to estimate the actual loss and consequential damage suffered by the plaintiff by reason of defendant's occupation of her land at the sum of $2,000. He found the costs and expenses of the proceeding to be $265; making the total loss to the plaintiff arising out of the defendant's misconduct the sum of $2,265. Upon a motion by the plaintiff for the confirmation of this report, the learned judge who heard the case at special term thought that the

referee had erred in considering himself bound to find that the damages sustained by the plaintiff in consequence of defendant's failure to comply with the terms of the judgment was the precise sum fixed by the judgment itself. "It would seem," he said, "that those damages were apportioned without regard to the construction of the farm crossing, and there was no adjudication as to the amount of the damages after the farm crossing was constructed; and as it was the duty of the referee, under the order appointing him, to ascertain the actual damage sustained by the plaintiff, he should have taken the evidence, and ascertained the actual damage which had been sustained." Accordingly, he sent the matter back to the referee for the purpose of completing the reference under the original order.

In behalf of the appellants it is contended that, after the referee had fixed the amount of damages, the court at special term had no option, but was bound to adjudge that the plaintiff had sustained damage to that amount. Their counsel insists that our affirmance of the order by which the referee was appointed took away all discretion from the court in which the motion was made to confirm the referee's report. This contention involves an entire misapprehension of the scope and effect of the order. It was in no sense a final disposition of all the questions presented for determination, and the court of appeals so held. 155 N. Y. 102, 49 N. E. 662. The object of ordering the reference was to ascertain precisely what actual loss or injury had been sustained by the plaintiffs in consequence of the defendant's failure to comply with the terms of the judgment, in order that the fine provided by section 2284 of the Code of Civil Procedure might be imposed upon the offender, and paid over to the aggrieved party. Upon the facts as they appeared to exist at the time the order of reference was made, the conclusion was justified, which was set out in the order to the effect that plaintiff had been injured to the extent of the value of such of her land as had been appropriated by the construction and maintenance of the defendant's embankment. By affirming the order containing that declaration, however, we did not, by any means, intend to preclude the defendant from showing before the referee, at such time as the matter should come on for a hearing before him, that the relative positions of the parties had changed, if such was the fact, so that the measure of damages which was proper at the time when the order was made had ceased to be applicable to the changed condition of things. Since that order the defendant has instituted condemnation proceedings to acquire the interest of the former plaintiff in the lands occupied by the railroad embankment; and, although these proceedings were not begun within the 60 days limited by the judgment, the fact that they have been commenced is one which should not be ignored in estimating the extent of the defendant's liability for the contempt with which it is charged. The judgment permitted the defendant, as a condition of continuing in occupation of the embankment, either to pay the $2,000, or, on the other hand, to construct the farm crossing, and commence proceedings to condemn. The defendant has con-

structed the farm crossing, and has commenced proceedings to condemn; and by so doing it would have fully complied with one of the alternative conditions of the judgment if the proceedings to condemn had not been begun about two months later than the expiration of the time limited by the judgment. So far as this delay has occasioned any loss to the plaintiffs, they are entitled to be reimbursed for it in this proceeding; but if the proceedings to condemn have been begun, and are being diligently prosecuted in good faith, the actual injury suffered by the plaintiffs would seem, necessarily, to be limited to such damage as has been caused by the delay in instituting them, in addition to such costs and expenses as the former plaintiff and present plaintiffs have incurred. In a proceeding to determine what punishment shall be imposed for a civil contempt, in which the punishment is to be measured by such sum as will compensate the injured party for his actual loss, the inquiry must always relate to the condition of things at the time when the penalty is to be imposed. The object of sending the case to the referee was to ascertain by means of his report the extent of the injury to Mrs. Ray (in addition to the $250 already assessed), as nearly as practicable, up to and at the date when a further order should be made assessing the additional damage not fixed by the first order. Hence it was and is proper for the referee to inquire into and take into consideration any and all existing circumstances, if any there be, which make the actual injury less than it appeared to be when the fine of $250 was imposed, and the amount of the defendant's further liability was left open for subsequent determination. As Mr. Justice Stover very pertinently observed at special term, if the court did not intend that the question as to the amount of the additional damages should remain open, but that the $2,000 mentioned in the judgment should be paid, there would seem to have been no occasion for any reference to ascertain those damages. We think that he was clearly right in sending the case back to the referee. The order should be modified, however, by requiring that the damages be ascertained as they exist at the time of the execution of the order of reference, and, as thus modified, it should be affirmed, with costs. All concur.